**LOCAL UNION NO. 11, INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, AFL–CIO, Appellant,**

v.

**G. P. THOMPSON ELECTRIC, INC.,** Appellee.

**No. 20427.**

United States Court of Appeals Ninth Circuit.

June 28, 1966.

Albert Brundage, Julius Reich, of Brundage & Hackler, Los Angeles, Cal., for appellant.

David A. Maddux, of Sheppard, Mullin, Richter & Hampton, Los Angeles, Cal., for appellee.

Before JERTBERG and ELY, Circuit Judges, and JAMESON, District Judge.

JERTBERG, Circuit Judge:

The appellant is a labor organization within the meaning of the Labor-Management Relations Act. The appellee is an employer in an industry affecting commerce within the meaning of such Act. They are parties to a Collective Bargaining Agreement which contains provisions which require employers to contribute specified payments to two Trust Funds established by the terms of the Agreement. The Agreement also contains provisions for the arbitration of disputes which cannot be amicably adjusted.

On or about December 2, 1964, appellee and other employers, parties to said Collective Bargaining Agreement, filed an action in the United States District Court for the Southern District of California, Central Division, seeking to enjoin the appellant and others from demanding or accepting payments into said Trust Funds on the grounds that the Trust Funds had never been properly established and were void and in violation of Sec. 302 of the Labor-Management Relations Act of 1947, as amended. See: Auten, et al. v. Local Union No. 11, et al., No. 64–1670, Southern District of California, Central Division.

On December 31, 1964, appellant filed its answer to the complaint which admitted specified allegations to be true, and denied the truth of the remaining allegations. The parties to that action cross-motioned for summary judgment under Rule 56, Federal Rules of Civil Procedure. On February 17, 1965, the District Court concluded that the Trust Funds established in the Collective Bargaining Agreement were lawful.

On or about March 19, 1965, appellant commenced an action in the Superior Court of the State of California to enforce an arbitration award made pursuant to the terms of the Collective Bargaining Agreement. The arbitration award had been rendered on March 8, 1965, by a committee created pursuant to the Collective Bargaining Agreement. The award was based upon a grievance filed by appellant followed by a hearing before the Committee held on December 18, 1964. The award, among other things, required the appellee to make payments into the two Trust Funds.

The proceedings were then removed by appellee to the United States District Court pursuant to the provisions of 28 U.S.C. § 1441.

Upon cross-motions, based on Sec. 9 of the United States Arbitrations Act [9 U.S.C. § 9], the appellant and the appellee, respectively, moved to confirm and vacate the arbitration award. In its answer to appellant's petition to confirm

the arbitration award, the appellee alleged, among other things: "The claims asserted by plaintiff herein by way of seeking to enforce said arbitration award through which plaintiff seeks to require defendant herein to make contributions into a pension trust fund and an apprenticeship and journeymen training trust fund, are and were compulsory counterclaims within the meaning of the provisions of Rule 13(a) of the Federal Rules of Civil Procedure to the complaint on file" in the *Auten* action previously mentioned, and, "By reason of plaintiff herein having failed to assert said claims as counterclaims" in the *Auten* action, "said claims have been waived and cannot be asserted in the above captioned action."

The District Court found, *inter alia,* that: "The claims asserted by plaintiff herein, Local Union No. 11, through which plaintiff seeks to require defendant herein to make contributions into a pension trust fund and an apprenticeship and journeymen training trust fund, are and were compulsory counterclaims within the meaning of the provisions of Rule 13(a) of the Federal Rules of Civil Procedure to the complaint on file in" the *Auten* action, and: "By reason of plaintiff herein Local Union No. 11 having failed to assert said claims as counterclaims" in the *Auten* action "said claims have been waived and cannot be asserted in the above captioned action."

By its judgment the District Court vacated that portion of the award of the Arbitration Committee which seeks to order appellee to:

(a) Make contributions to the Pension Trust Fund in the amount of $1,387.20 representing the amounts due for the months of July, August, September and October, 1964; and

(b) Make contributions to the Apprenticeship and Journeymen Training Trust Fund in the amount of $158.20, representing the amounts due for the months of July, August, September and October, 1964.

There appears to be no issue on this appeal as to the following matters:

1. That under the Collective Bargaining Agreement appellee promised and agreed to make monthly payments in specified amounts into the two trust funds;

2. That it failed and refused to make such payments for the months of July, August, September and October of 1964, although demand was made upon it by appellant to do so;

3. That such failure on the part of appellee constituted an arbitrable grievance under the Collective Bargaining Agreement;

4. That the arbitration proceedings were regular in all respects and in accordance with the provisions of the Collective Bargaining Agreement;

5. That at the time when appellant filed its answer in the *Auten* action, appellant had arbitrable grievances against the appellee for its failure to make payments into the two trust funds for the months of July, August, September and October, 1964, and that such grievances arose from the trust fund provisions of the Collective Bargaining Agreement, which provisions of said Agreement were subject matter of appellee's complaint against the Union in the *Auten* action; and

6. That the subject matter of the complaint of appellee in the *Auten* action was not arbitrable under the arbitration provisions of the Collective Bargaining Agreement.

Hence, the sole issue on this appeal is whether the arbitrable grievances asserted by appellant against appellee in the arbitration proceedings are compulsory counterclaims which appellant waived by failing to assert them in the *Auten* action.

The question presented appears to be one of first impression, and requires a resolution of the conflict resulting from the collision between the application to the facts of this case of Rule 13(a), Federal Rules of Civil Procedure, and the

application to the facts of this case of the principles of law which require parties to a Collective Bargaining Agreement to exhaust arbitration proceedings contained in such agreements before seeking judicial relief.

Rule 13(a), Federal Rules of Civil Procedure, in relevant part provides:

"(a) *Compulsory Counterclaim*

"A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence · that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction."

■ The purpose and design of Rule 13(a) is to prevent multiplicity of litigation and to bring about prompt resolution of all disputes arising from common matters. See Southern Construction Co., Inc. v. Pickard (1962), 371 U.S. 57, at page 60, 83 S.Ct. 108, at page 110, 9 L.Ed.2d 31, where it is stated as follows:

"The requirement that counterclaims arising out of the same transaction or occurrence as the opposing party's claim 'shall' be stated in the pleadings was designed to prevent multiplicity of actions and to achieve resolution in a single lawsuit of all disputes arising out of common matters. The Rule was particularly directed against one who failed to assert a counterclaim in one action and then instituted a second action in which that counterclaim became the basis of the complaint."

■ If a party fails to plead a compulsory counterclaim, he is held to waive it and is precluded by *res judicata* from ever suing upon it again. See Union Paving Company v. Downer Corporation, 276 F.2d 468 (9th Cir. 1960), and the cases therein cited. See also United States v. Eastport Steamship Corp., 255 F.2d 795 (2d Cir. 1958).

■ Since the grievances of appellant were being processed through the arbitration procedures set forth in the Agreement at the time appellant was required to file its answer to the complaint in the *Auten* case, it could have filed such grievances as compulsory counterclaims in the *Auten* action only by foregoing and waiving its contractual rights to have the disputes involved determined by the arbitration committee. We do not believe that, in the context of this case, applicable law compelled appellant to make such choice.

The Collective Bargaining Agreement provides for arbitration of all matters concerning questions, interpretations, disputes, or violations of the Collective Bargaining Agreement, and that the decision reached by the arbitration committee shall be final and binding. In these circumstances appellant should not be deprived of the decision of the arbitration committee when it was their judgment and all that it connotes that was bargained for.

In Drake Bakeries, Inc. v. Local 50, American Bakery and Confectionery Workers, 370 U.S. 254, at page 263, 82 S.Ct. 1346, at page 1352, 8 L.Ed.2d 474 (1962), the Supreme Court stated:

"In passing § 301, Congress was interested in the enforcement of collective bargaining contracts since it would 'promote a higher degree of responsibility upon the parties to such agreements, and will thereby promote industrial peace' (S.Rep.No.105, 80th Cong., 1st Sess. 17). It was particularly interested in placing 'sanctions behind agreements to arbitrate grievance disputes' (Textile Workers Union v. Lincoln Mills, 353 U.S. 448, 456 [77 S.Ct. 912, 1 L.Ed.2d 972]). The preferred method for settling disputes was declared by Congress to be '[f]inal adjustment by a method agreed upon by the parties' (§ 203(d) of the Act, 29 U.S.C. § 173(d)). 'That policy can be effectuated only if the means chosen by the parties for settlement of their differences under a collective bargaining agreement is given full play' (United Steelworkers v.

American Mfg. Co., 363 U.S. 564, 566 [80 S.Ct. 1343, 4 L.Ed.2d 1403]). Under our federal labor policy, therefore, we have every reason to preserve the stabilizing influence of the collective bargaining contract in a situation such as this."

In *Drake Bakeries,* supra, an employer sought damages for breach of contract, alleging that the union had actually repudiated the agreement by striking in the face of a no-strike pledge, and had thus waived the right to demand arbitration. The Supreme Court stated, 370 U.S. at page 262, 82 S.Ct. at page 1351, that the strike action was not "such a breach or repudiation of the arbitration clause by the union that the company is excused from arbitrating, upon theories of waiver, estoppel, or otherwise."

It is to be noted that a Collective Bargaining Agreement is not an ordinary agreement. John Wiley & Sons, Inc. v. Livingston, etc., 376 U.S. 543, 550, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964).

In United Steelworkers v. Warrior & Gulf Nav. Co., 363 U.S. 574, at page 578, 80 S.Ct. 1347, at page 1351, 4 L.Ed.2d 1409 (1960), it is stated:

"The collective bargaining agreement states the rights and duties of the parties. It is more than a contract; it is a generalized code to govern a myriad of cases which the draftsmen cannot wholly anticipate."

And at page 581, 80 S.Ct. at page 1352, it is stated:

"But the grievance machinery under a collective bargaining agreement is at the very heart of the system of industrial self-government. Arbitration is the means of solving the unforeseeable by molding a system of private

law for all the problems which may arise and to provide for their solution in a way which will generally accord with the variant needs and desires of the parties. The processing of disputes through the grievance machinery is actually a vehicle by which meaning and content are given to the collective bargaining agreement.

"Apart from matters that the parties specifically exclude, all of the questions on which the parties disagree must therefore come within the scope of the grievance and arbitration provisions of the collective agreement. The grievance procedure is, in other words, a part of the continuous collective bargaining process. It, rather than a strike, is the terminal point of a disagreement."

We believe that to require appellant to set forth its grievances as compulsory counterclaims in the *Auten* action while said grievances are being processed through the arbitration provisions of the Collective Bargaining Agreement is contrary to the national labor policy as set forth in the Labor-Management Relations Act, and contrary to the principles enunciated in many decisions by the Supreme Court. If one of the disputing parties could, by filing a complaint alleging a grievance outside the scope of the agreement for arbitration, force his opponent to by-pass arbitration and assert counterclaims as to controversies otherwise arbitrable, the desired intent and purpose of arbitration agreements could be effectively frustrated.

The judgment of the District Court vacating portions of the award of the arbitration committee which are the subject matter of this appeal is reversed.